UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUDY HAUGNESS,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations

                Defendant.

Case No. 2:17-cv-01277-TLF

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of the Commissioner's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded to the Commissioner for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On June 25, 2014, plaintiff filed an application for disability insurance benefits, alleging she became disabled beginning August 20, 2013. Dkt. 6, Administrative Record (AR) 19. Her application was denied on initial administrative review and on reconsideration. *Id.* A hearing was

held before an administrative law judge (ALJ), at which plaintiff appeared and testified as did a vocational expert. AR 34-77.

In a written decision dated May 19, 2016, the ALJ employed the Commissioner's five-step sequential disability evaluation process to find plaintiff not disabled.[1] *Id.* at 19-29. Step one of that process considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). Step two considers "the severity of the claimant's impairments. *Id.* If the claimant is found to have a severe impairment, step three considers "whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the claimant's residual functional capacity ("RFC") is considered at step four in determining whether the claimant can still do his or her past relevant work and, if necessary, at step five whether he or she can "make an adjustment to other work." *Id.*

At step one of the sequential evaluation process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. AR 21. At step two, the ALJ found that plaintiff had severe impairments consisting of an affective disorder and an anxiety disorder. *Id.* at 21-22. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 22-23. The ALJ next considered plaintiff's residual functional capacity (RFC), finding at step four that she does not have any past relevant work, but that at

---

[1] The Commissioner employs a five-step sequential disability evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.*

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 2

step five she could perform jobs existing in significant numbers in the national economy, and therefore that she was not disabled. AR 23-29.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making that decision the Commissioner's final decision, which plaintiff then appealed in a complaint filed with the Court on August 23, 2017. AR 1; Dkt. 1; 20 C.F.R. § 404.981. Plaintiff seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1) in rejecting the medical opinion evidence in the record;

(2) in rejecting plaintiff's testimony; and

(3) in rejecting the statements of plaintiff's husband.

For the reasons set forth below, the Court agrees the ALJ erred as alleged, and therefore reverses the denial of plaintiff's application for benefits and remands this matter to the Commissioner for further administrative proceedings.

## DISCUSSION

The Court must uphold the Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). Thus, even where a decision is supported by substantial evidence, it will nevertheless "be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see*

*also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, *supra* at 1193. Substantial evidence requires a determination as to whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. <u>The ALJ's Evaluation of the Medical Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences

"logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A. <u>Dr. Berger</u>

Plaintiff argues the ALJ erred at step two of the sequential disability evaluation process in not finding the diagnosis of ADHD given to her by her treating physician, Jeff Berger, M.D., to be a severe impairment. As noted above, at step two, the ALJ found only that plaintiff's affective and anxiety disorders were severe impairments. AR 21-22. Defendant argues any error on the ALJ's part here was harmless, because the ALJ properly accounted for all of plaintiff's symptoms and limitations stemming from that diagnosis in assessing plaintiff's RFC during the later steps of the sequential evaluation process.

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856, at *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff must prove that his "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290.

Defendant does not argue plaintiff's ADHD should not have been found to be a severe

impairment at step two. Indeed, the record supports such a determination. For example, in mid-January 2015, Dr. Berger opined that plaintiff's "[l]apses in concentration and attention sound like ADHD." AR 277. Later that month, Dr. Berger further opined that plaintiff's anxiety had "worsened substantially with reduction in Ativan without improving cognition, which is most likely a function of ADHD." AR 274. Although Dr. Berger subsequently indicated medication was helpful in treating plaintiff's ADHD, he also noted it caused "intolerable" side effects. *Id.* at 262, 265, 271.

The record thus supports a finding that plaintiff's ADHD has had more than a minimal impact on her ability to perform basic work activities and therefore is a severe impairment. In addition, as explained below, the ALJ failed to properly account for all of plaintiff's symptoms and limitations, and therefore it cannot be said that the ALJ's failure here had no prejudicial effect on the ALJ's ultimate non-disability determination. Accordingly, the ALJ's error was not harmless as defendant asserts. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless where it is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error by the ALJ would not have affected the ALJ's ultimate decision).

B. <u>Dr. Clarke</u>

In late March 2014, plaintiff's treating psychologist, Jennifer Finstad Clarke, Ph.D., opined that "[d]ue to acute anxiety, intrusive re-experiencing depression, difficulty concentrating and shaken self[-]esteem, she is currently unable to work." AR 255. The ALJ gave Dr. Clarke's opinion "little weight," because there was "other evidence in the record that shows [plaintiff] is functional." *Id.* at 27. As examples of plaintiff's ability to function, the ALJ pointed to plaintiff "report[ing] to her therapist that [she] enjoys meeting new people online" and "help[ing] with the

planning of her son's wedding," as well as "progress notes indicat[ing] her anxiety to be well managed on Ativan." *Id.*

The Court agrees with plaintiff that these are not valid reasons for rejecting Dr. Clarke's opinion. Other than noting one statement about enjoying meeting people online, the ALJ fails to point to specific evidence indicating the frequency and extent to which plaintiff engages in this activity. As such, that statement alone does not provide a clear picture regarding the level of plaintiff's functionality. In addition, the statement is not at all inconsistent with plaintiff's claims that she isolates herself at home and does not leave the house due to panic attacks. AR 24. As plaintiff also points out, the record is devoid of detail regarding what *she* did in terms of helping plan her son's wedding. *See id.* at 394.

Contrary to the ALJ's characterization of the mental health progress notes in the record, those notes show plaintiff suffered from some fairly significant medication side effects (*id.* at 262, 265, 277), and her functional status often was described as being "[v]ariably impaired," with any improvement generally waxing and waning over time (*id.* at 300-302, 304-10, 312-18 320, 322, 324, 326, 329, 331, 333, 335, 337, 339, 341, 344-403). *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

C. <u>Ms. Iversen</u>

In mid-November 2013, plaintiff's psychotherapist, Lisa Iversen, MSW, LICSW, opined that plaintiff had "difficulty concentrating," that her condition was "exacerbated by work," and that her "ability to concentrate/focus [on] tasks required for [a job were] compromised currently

due to" her general anxiety disorder. AR 285-86. The ALJ gave only "some weight" to these opinions, noting that Ms. Iversen was "not a qualified medical source," that she "did not opine on many functional limitations," that she expected improvement would occur "in 3-6 months," and that plaintiff "showed objective signs of progress," as evidenced by a progress note indicating she was "greatly improved" during a mental evaluation in December 2015. AR 26-27.

As plaintiff points out, however, the mere fact that an opinion source is not a "qualified medical source" is not a sufficient basis upon which to reject that source's opinion:

> . . . With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. . . .
>
> . . . [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence [set forth in 20 CFR § 404.1527(d)], an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. . . .

SSR 06-03p, 2006 WL 2329939, at *3-*5. Ms. Iversen saw plaintiff regularly over a nearly three year period, and therefore was in a good position to provide evidence concerning the nature and extent of plaintiff's symptoms and limitations. *See* AR 300-403.

While Ms. Iversen may not have opined on "many" functional limitations, she did find plaintiff had difficulty concentrating and that her ability to concentrate/focus was compromised. Thus, at least as to that aspect of plaintiff's functionality, Ms. Iversen provided a specific opinion

that the ALJ was required to expressly address. *See* SSR 06-03p, *supra* at *3-*5; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (because the Commissioner's regulations treat public and private welfare agency personnel such as social workers as "other sources," testimony therefrom is considered lay testimony, which ALJ may expressly disregard for germane reasons).

In addition, although plaintiff's condition showed some improvement, as discussed above, her mental condition and any improvement waxed and waned over time. *See* AR 300-302, 304-10, 312-18 320, 322, 324, 326, 329, 331, 333, 335, 337, 339, 341, 344-403. For example, plaintiff was described as being "[v]ariably impaired" with only "mixed progress" at the same time that she was described as "greatly improved" in December 2015, and for several months thereafter. *Id.* at 344-52. Accordingly, the Court finds the ALJ erred in her rejection of this opinion evidence as well.

II.    The ALJ's Rejection of Plaintiff's Testimony

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Here, the ALJ provided two reasons for rejecting plaintiff's testimony regarding her symptoms and limitations. First, the ALJ found the types of daily activities plaintiff engaged in – cleaning, cooking, and managing her personal finances – were not typical of a disabled individual. AR 26. The ALJ noted plaintiff's report that she enjoyed meeting new people online, helping with her son's wedding planning, and starting a home business in the time since she stopped working full-time. *Id.*

The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id.* In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

As discussed above, though, the evidence in the record regarding plaintiff's involvement in planning her son's wedding and meeting others online fails to indicate she is more functional than she has alleged. As for the daily activities the ALJ lists, the record does not show plaintiff engaged in household chores for a substantial part of the day or other activities at a frequency or level that necessarily are transferrable to a work setting. AR 52-53, 56-57, 62-64, 191-94, 202-06; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.").

Similarly, although plaintiff testified that she sold her own furniture on Craig's List, and this was a home business after she stopped working full-time, the record shows the level of activity she engaged in did not involve tasks or activities necessarily transferrable to a work setting. AR 57-62 (plaintiff testified the business tasks were more like "play"). The ALJ's second reason for rejecting plaintiff's testimony is equally without merit. As discussed above, while plaintiff has received some benefit from medication, she also experienced significant and even "intolerable" side effects therefrom. *Id.* at 262, 265, 268, 271, 274, 277. Further, also as discussed above, although plaintiff's condition has shown improvement, the waxing and waning

nature of that improvement makes the ALJ's reliance on this basis for rejecting plaintiff's testimony improper as well.

III. The ALJ's Rejection of Plaintiff's Husband's Testimony

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Plaintiff's husband, Casey Haugness, completed an adult function report; he stated that plaintiff had trouble concentrating, could not stay on task or finish tasks very well, could not make decisions, had very little attention span, and gets "confused on dates." AR 190, 194-95.

Mr. Haugness also stated that in general plaintiff took longer to complete household chores, and that she could handle money but has had "some recent trouble" with the checking account. *Id.* at 192-93. He further stated that plaintiff gets very aggressive and has conflicts with at least one neighbor, gets anxious very easily, and does not handle stress or changes in routine very well. *Id.* at 195-96. Plaintiff argues, and the Court agrees, that none of the reasons the ALJ offered are sufficient for rejecting Mr. Haugness's statements.

The first reason the ALJ offered for giving only "some weight" to Mr. Haugness's statements, was the inconsistency of those statements "with the objective medical evidence and opinions of record," noting specifically plaintiff's improved functional status and decreased

suicidal ideation. AR 26. Again, however, the evidence in the record does not show the type of sustained consistent improvement that would support the ALJ's discounting of those statements on this basis.

The ALJ also rejected Mr. Haugness's statements on the basis that he "does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and mannerisms." *Id.* But as plaintiff points out, this is the incorrect standard upon which to assess lay witness testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."); SSR 06-03p, 2006 WL 2329993, at *2 ("[W]e may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. . . . [I]nformation from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

The ALJ's third and final reason for discounting Mr. Haugness's statements is also legally erroneous. The ALJ determined that "by virtue of his relationship with" plaintiff her husband cannot be considered to be "a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." AR 26; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that the ALJ relied in part on a fact "quite common to spouses," i.e., that the claimant's wife "was an interested party," and that "[s]uch a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily

activities are competent to testify as to [his or] her condition.'") (quoting *Dodrill*, 12 F.3d at 918-19).

## CONCLUSION

The ALJ found plaintiff had the residual functional capacity to perform other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process. AR 28-29. However, as discussed above, the ALJ erred in evaluating the medical evidence in the record, in rejecting plaintiff's testimony, and in rejecting the statements of plaintiff's husband. The ALJ's RFC assessment, and thus his step five determination, are not supported by substantial evidence and cannot be upheld.

Accordingly, the Court finds the ALJ improperly determined plaintiff to be not disabled at step five. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED to the Commissioner for further administrative proceedings in accordance with this opinion.

Dated this 15th day of August, 2018.

Theresa L. Fricke
United States Magistrate Judge